IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACEY NADIRAH SHAW | : | |
| | : | |
| *Plaintiff,* | : | Civil No. 1:17-cv-00229-SPB |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS; DR. REBECCA BURDETTE; and DR. LAWRENCE ALPERT, Medical Director at SCI Cambridge Springs | : | ELECTRONICALLY FILED |
| | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| *Defendants.* | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS OF
DEFENDANTS BURDETTE AND ALPERT**

I.       STATEMENT OF THE CASE

Plaintiff Tracey Shaw filed this action pursuant to 42 U.S.C. § 1983 for violations of her rights under the Eighth Amendment of the United States Constitution, the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and Pennsylvania state law against medical malpractice. Ms. Shaw suffers from progressively worsening chronic neuropathic pain in her back, neck, legs, and pelvic area caused by serious medical conditions including spinal stenosis, osteoarthritis of the spine, degenerative joint disease in her hips, and fibromyalgia. First Amended Complaint [hereafter "FAC"] at ¶ 8.

Defendant Burdette terminated an effective prescription that Ms. Shaw had been prescribed for eight years without any examination, offering any medical justification, or prescribing any alternative treatment. *Id.* at ¶¶ 21-24. Thereafter, Defendant Burdette refused to

1

reinstate the prescription despite being aware that Ms. Shaw was suffering from "substantial chronic pain" and that she had "repeatedly requested Lyrica from medical staff, including from Defendants Burdette and Alpert." *Id*. at ¶¶ 25-28, 34.

Defendant Alpert also refused to reinstate Ms. Shaw's Lyrica prescription despite Ms. Shaw repeatedly requesting its reinstatement and informing him that she was suffering from worsening pain. *Id.* at ¶¶ 25, 34, 42-43, 48, 57, 64. For sixteen of the twenty-two months between her initial removal from Lyrica and the filing of the initial Complaint in this action, Defendant Alpert simply provided no treatment for her chronic pain at all. *Id*. at ¶ 46. For those few months that some treatment was provided by Defendant Alpert, he prescribed her medications that were not approved for her condition, and he continued in utilizing these ineffective medications even after Ms. Shaw repeatedly told him they were ineffective, causing her to endure daily excruciating pain. *Id*. at ¶¶ 35-38, 47, 61. As a result of the denial of medication, Ms. Shaw's condition deteriorated, substantially reducing her ability to move around the prison and ultimately resulting in a fall and broken hip. *Id*. at ¶¶ 38-39, 41-42, 112-115.

Defendants Alpert and Burdette have filed a Motion to Dismiss. That motion should be denied in its entirety for the reasons articulated in this brief.

## II.     STANDARD OF REVIEW

In evaluating Defendants' motion, the Court must accept all of Plaintiff's factual allegations as true and consider the complaint in the light most favorable to him. *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010). To survive a motion to dismiss, a plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322 n.12 (2011)). A plaintiff's pleading burden is satisfied where the factual

content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Keybank Nat'l Assoc. v. Voyager Group, LP,* No. 09-1238, 2010 U.S. Dist. LEXIS 34071, *2 (W.D. Pa. Apr 7, 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The burden is on the moving party to show there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980). Dismissal of claims should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**III.     ARGUMENT**

  A. Ms. Shaw Has Stated an Eighth Amendment Claim

The Eighth Amendment claim against Defendants Burdette and Alpert should not be dismissed as Ms. Shaw has pleaded adequate facts to allege Defendants' deliberate indifference to her serious medical need. At the core of the Eighth Amendment is the prohibition against cruel and unusual punishment. While prisons may be "restrictive and even harsh," *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), "society may not simply lock away offenders and let the state of nature take its course." *DeShaney v. Winnebago Dept. of Social Svcs.*, 489 U.S. 189, 199-200 (1989). Thus, when the state imprisons an individual, such that the person is unable to care for himself, the Constitution imposes "a corresponding duty to assume some responsibility for [her] safety and general well being." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). This responsibility, in the context of inmate health care, precludes prison officials from being "deliberately indifferent" to an inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Ms. Shaw's devastating chronic pain as a result of her numerous medical conditions including spinal stenosis and fibromyalgia constitutes a serious medical need. A serious medical

3

need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Furthermore, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Id.* The Supreme Court has acknowledged that non life-threatening conditions that cause significant pain qualify as a "serious medical need" for the purposes of Eighth Amendment analysis. *Estelle*, 429 U.S. at 107 (finding a viable Eighth Amendment claim based "solely on the lack of diagnosis and inadequate treatment of his back injury" diagnosed as a back sprain); *see also Spruill v. Gillis*, 372 F.3d 218, 218 (3d Cir. 2004) (determining that extreme pain can qualify as a serious medical need); *Mata v. Saiz*, 427 F.3d 745, 754-55 (10th Cir. 2005) (severe pain lasting "several days" constitutes serious medical need); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("the existence of chronic and substantial pain" indicates a serious medical need); *Hathaway v. Coughlin*, 37 F.3d 63, 64-65 (2d Cir. 1994) (persistent pain caused by failure to remove broken hip pins is serious medical need); *Taylor v. Franklin County*, 104 Fed. App'x. 531, 538 (6th Cir. 2004) (back pain and loss of mobility are serious medical needs). Ms. Shaw's debilitating chronic back and neck pain spanning nearly a decade and the multiple corresponding diagnoses unquestionably meet the objective element of an Eighth Amendment medical care claim.

Plaintiff's Amended Complaint is replete with factual allegations that Defendants Burdette and Alpert were deliberately indifferent to her serious medical need for chronic pain treatment. "An inmate must rely on prison authorities to treat [her] medical needs; if the authorities fail to do so, those needs will not be met." *Estelle,* 429 U.S. at 103. Consequently,

4

"[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose" runs afoul of the Eighth Amendment's prohibition of cruel and unusual punishment. *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). To establish a violation of the Eighth Amendment, a plaintiff must show that the acts or omissions of prison officials "evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. Deliberate indifference has been adequately plead when it is alleged that a Defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Contrary to Defendants' principal argument that Ms. Shaw's claims should be dismissed as her "complaint clearly demonstrates that she received medical care for her alleged chronic complaints," Defs. Brief in Support of Motion to Dismiss, Docket No. 14, at pg. 13, "[d]eliberate indifference does not require a showing of complete failure to provide care, rather where prison authorities deny reasonable requests for medical treatment…and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Royster v. Corizon*, Civ. No. 3:cv-13-1449, 2014 U.S. Dist. LEXIS 56715, *13 (M.D. Pa Apr. 22, 2014) (citations and quotations omitted). The *Estelle* standard is met 1) when a medical professional intentionally inflicts pain on a prisoner, 2) when prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering, or 3) when knowledge of the need for medical care is accompanied by the intentional refusal to provide that care. *See Spruill*, 372 F.3d at 235.

Moreover, the Third Circuit has recently unambiguously recognized that:

> there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "an easier and less efficacious treatment" of the inmate's condition. *West v. Keve*, 571

5

F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Nor may "prison authorities deny reasonable requests for medical treatment ... [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). And, "knowledge of the need for medical care [may not be accompanied by the] ... intentional refusal to provide that care." Id. (alterations in original) (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

Ms. Shaw has alleged that her chronic pain has not been treated or inappropriate[1] and ineffective treatments offered – despite the availability of an effective medication that she had been prescribed for eight years – with the full knowledge of Defendant Alpert that these were ineffective. Defendants Burdette and Alpert have withdrawn and refused to reinstate effective medication and denied reasonable requests for medical care,; left Ms. Shaw untreated for most of the last two years, and knowingly provided medications that are not approved for and had no effect on her condition. FAC at ¶¶ 25-28, 34-38, 42-43, 46-48, 57, 61, 64. Persistence in a course of treatment "in the face of resultant pain and risk of permanent injury" constitutes deliberate indifference. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir. 1990)). Accordingly, Ms. Shaw has alleged sufficient facts to establish deliberate indifference on behalf of Defendants Burdette and Alpert. In addition, as the *Palakovic* case and those it cites instruct, factual allegations that a defendant has altogether refused to provide care for a serious medical need, or has provided "an easier and less efficacious treatment" despite being aware that this is causing pain, state a claim for relief under

---

[1] Defendants assert without evidence and in contravention of the standard the Court must utilize in construing factual allegations at this stage in the case that the other medications Ms. Shaw received were "appropriate." The Complaint, however, alleges that these medications were not approved for her condition and were not effective; in other words, they were not "appropriate." FAC at ¶¶ 35-38, 47, 61

the Eighth Amendment. Therefore, Plaintiff has met her burden and her Eighth Amendment claims should proceed.

> B. This Court Should Disregard Defendants' Argument Pertaining to Exhaustion of Administrative Remedies as it is Inappropriate in a Motion to Dismiss

Failure to exhaust administrative remedies is an affirmative defense, which must be pleaded and proved by Defendants. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Ray v. Kertes*, 258 F.3d 287, 295 (3d Cir. 2002). There is no requirement that Ms. Shaw include any allegations regarding exhaustion of administrative remedies in her complaint, and she did not do so. *See Jones*, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."). An affirmative defense may only serve as grounds for dismissal under Rule 12(b)(6) when it appears on the face of the complaint. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). Defendants' argument that Ms. Shaw's request for damages with respect to her Eighth Amendment claim against them should be dismissed because she has failed to exhaust her administrative remedies is, therefore, inappropriately raised in a Rule 12(b)(6) motion and should be rejected by this Court.

Similarly, the documents attached as exhibits to Defendants' motion and brief should not be considered by this Court, because they are neither integral to the Amended Complaint nor relied upon by the Complaint. A district court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents outside the pleadings *if* the documents are "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.3d 1192 (3d Cir. 1993) (explaining that a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss *if* the plaintiff's claims are based on the document.") (emphasis added). However if the documents attached to a defendant's motion

do not form the basis of the plaintiff's complaint, a court may not consider such documents when ruling on the Rule 12(b)(6) motion.[2] *See e.g., Fagin v. Gilmartin*, 432 F.3d 276, 284-86 (3d Cir. 2005) (finding that relying on documents not found in the complaint required conversion to summary judgment); *Fosburg v. Lehigh Univ.*, No. 98-CV-864, 1999 U.S. Dist. LEXIS 2833, *5-6 (E.D. Pa. 1999) (refusing to apply the *PBGC* exception where the attached documents were not the actual source of the plaintiff's case); *Marjac, LLC v. Trenk*, No. 06-1440, 2006 U.S. Dist. LEXIS 91574, *39-40 (D.N.J. 2006) (same); *Brown v. Wiener*, No. 04-CV-3442, 2005 U.S. Dist. LEXIS 15610, *7-9 (E.D. Pa. 2005) (consideration of an exhibit to a motion to dismiss is permitted when the allegations in the complaint are based on the document and/or the complaint describes the document's terms). Ms. Shaw did not attach any documents as exhibits to her Amended Complaint and did not rely on any of Defendants' exhibits in stating the allegations of the complaint. Consequently, Defendants' exhibits should be disregarded by this Court when ruling on the instant Rule 12(b)(6) motion.

### C. Ms. Shaw Properly Exhausted All Available Administrative Remedies

In the alternative, this Court should deny Defendants' Motion to Dismiss Ms. Shaw's damages claims as Defendants have not proven that she has failed to exhaust her administrative remedies. To the contrary, Ms. Shaw has properly exhausted all available remedies for her denial of medical care claim as she has exhausted the processes provided by the Department of Corrections on numerous occasions, and in doing so she complied with all "critical procedural

---

[2] Defendants did not seek summary judgment "in the alternative" to dismissal under Rule 12(b)(6) and did not ask the court to convert their motion to a motion for summary judgment under Rule 56. Should this Court choose to convert Defendants' motion into a motion for summary judgment, Defendants should be directed to file a statement of material facts, as required under Local Rule 56.B.1, and Ms. Shaw should be given a reasonable opportunity to present all material which is pertinent to the motion. *See* Fed.R.Civ.P. 12(d). Furthermore, a motion for summary judgment would be premature at this time, as no discovery has been conducted.

rules." Ms. Shaw plainly put Defendants on notice that she would seek monetary compensation for the denial of medical care.[3]

The U.S. Supreme Court has held that under the PLRA "one 'exhausts' processes, not forms of relief." *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000) ("inmate-plaintiffs must exhaust all available administrative remedies" and "federal courts need not waste their time evaluating whether those remedies provide the [] prisoner with the relief he desires."). Ms. Shaw has complied with this requirement by fully exhausting the DOC's grievance process for her medical care claims on numerous occasions.

In *Booth*, the U.S. Supreme Court addressed whether the administrative "remedy" that has to be exhausted under the PLRA meant "specific relief obtainable at the end of a process of seeking redress, or the process itself, the procedural avenue leading to some relief." 532 U.S. at 738. The Court concluded that it was the <u>process</u> that must be exhausted even where the specific relief that was requested, in that case money damages, was unavailable:

> The "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained. While the modifier "available" requires the possibility of some relief for the action complained of (as the parties agree), the word

---

[3] In her grievance dated December 28, 2016, Ms. Shaw identified ongoing health problems, including a specific complaint regarding the denial of her Lyrica and the detrimental effects ot her health. *See* Dkt. 14-5, SOIGA File p. 6. Ms. Shaw requested immediate reinstatement of the wheelchair, reinstatement of her job, and indicated that if she does not obtain relief she will file suit in federal court seeking "injunctive relief as well as compensatory and punitive damages and attorney fees." *Id*. Ms. Shaw laid out her medical issues at that time, beginning with the termination of her Lyrica prescription, and specified that she wanted specific forms of relief or she would seek other forms of relief, including money damages, in court. *Id.* There is nothing confusing or insufficient in this grievance regarding her medical issues or her intentions to seek damages. DOC officials addressed Ms. Shaw's request for Lyrica *on the merits* in the initial review response at the prison that was issued by Deputy Superintendent Ennis. *See* Exhibit B, Initial Review Response January 2017. This grievance was fully exhausted to the final level appeal where it was again addressed *on the merits*. Defendants' brief admits that this grievance deals with medical issues and was exhausted, however they mistakenly assert that this grievance does not contain a request for monetary damages. *See* Def. Bf. at 8.

> "exhausted" has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. It would, for example, be very strange usage to say that a prisoner must "exhaust" an administrative order reassigning an abusive guard before a prisoner could go to court and ask for something else; or to say (in States that award money damages administratively) that a prisoner must "exhaust" his damages award before going to court for more. How would he "exhaust" a transfer of personnel? Would he have to spend the money to "exhaust" the monetary relief given him? It makes no sense to demand that someone exhaust "such administrative [redress]" as is available; one "exhausts" processes, not forms of relief, and the statute provides that one must.

*Id*. at 738-39. With this analysis, the Court held that "Congress has provided in § 1997e(a) that an inmate must exhaust *irrespective of the forms of relief sought and offered* through administrative agencies." *Id*. at 741, n.6 (emphasis added). Given the explicit holding on this issue by the Supreme Court, Defendants' attempt to graft an extra-textual requirement that a prisoner must exhaust all particular forms of relief later sought in litigation fails.

That the exhaustion requirement applies to "processes, not forms of relief" has ample precedent in the federal courts. *See e.g., Boyd v. U.S.*, 396 Fed. App'x. 793 795 (3d Cir. 2010) ("the bright-line rule of complete exhaustion applies regardless of 'whether [internal processes] provide the inmate-plaintiff with the relief ... [desired] in his federal action.'") (quoting *Nyhuis*); *Concepcion v. Morton*, 306 F.3d 1347, 1353-54 (3d Cir. 2002) ("Congress wanted the focus to be on the *availability* of an administrative remedy program") (emphasis in original); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (adopting *Strong* standard recognizing that "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation"); *Kikimura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) ("The reasoning of *Woodford* thus lends support to the approach followed by the Second and Seventh Circuits: that a grievance will satisfy the exhaustion requirement so long as it is not 'so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally.'") (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)); *Johnson v. Testman*,

380 F.3d 691, 697 (2d Cir. 2004) (prisoner does not have to "demand particular relief") (internal citation omitted); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("no administrative system may demand that the prisoner specify each remedy later sought in litigation" under *Booth*); *Jones v. Berge*, 172 F.Supp.2d 1128, 1134 (W.D. Wis. 2001) ("Any claim for relief that is within the scope of the pleadings may be litigated without further exhaustion."); *accord*, *Smith v. Buss*, No. 3:07-CV-0207, 2011 WL 1118065, at *9 (N.D. Ind. Feb. 18, 2011); *Patel v. Federal Bureau of Prisons*, 2:05CV00191, 2006 WL 1307733, at *3 (E.D. Ark. May 11, 2006); *Sample v. Lappin*, 424 F.Supp. 2d 187, 191 (D.D.C. 2006); *Lira v. Director of Corrections State of California*, No. C 00-905, 2002 WL 1034043, at *4 (N.D. Cal. May 20, 2002) ("[D]efendants' argument that Lira did not exhaust his claim for monetary relief because he did not seek monetary relief in his administrative grievance is unpersuasive because the Supreme Court specifically rejected this construction of § 1997e(a) in *Booth*"), *reversed and remanded on other grounds*, 427 F.3d 1164 (9th Cir. 2005), *cert. denied*, 549 U.S. 1204 (2007).

Numerous courts have specifically held that prisoners' damages claims are not barred for failure to ask for damages in the grievance process. *Buck v. Hartman*, 12-cv-273-JPG-PMF, 2013 WL 3421891, at *3-4 (S.D. Ill. July 8, 2013); *Del Rio v. Morgado*, No. CV 10-8955-CJC, 2012 WL 2092401, at *4 (C.D. Cal. May 1, 2012); *Lopez v. Adams*, 1:07-cv-00808, 2009 WL 1575195, at *2-3 (E.D. Cal. June 3, 2009), *report and recommendation adopted*, 2009 WL 2058540 (E.D.Cal. July 14, 2009); *Woodson v. Rodriguez*, No. C 07-04925, 2009 WL 799403, at *7 (N.D. Cal. Mar 24, 2009) (plaintiff need not have requested damages in order for defendants to have notice of the problems he raised); *Henderson v. Bettus,* 2:07-cv-97-FTM-34-DNF, 2008 WL 899251, at *4 (M.D. Fla. Mar 31, 2008); *Roberson v. McShan*, Civ. A. H-02-4365, 2006 WL 2469368, at *3 (S.D. Tex. Aug 24, 2006).

Further, as explained by the U.S. Supreme Court, the PLRA's exhaustion requirement provides that the plaintiff must comply with the administrative process' "deadlines and other critical procedural rules," what is colloquially known as "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Critical procedural rules are ones that facilitate proper exhaustion, "which 'means using all steps that the agency holds out, and doing so *properly* (<u>so that the agency addresses the issues on the merits</u>).'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (italics in original; underline added).

Defendants do not – and cannot – argue that the purpose of the exhaustion requirement was not met in this case. The DOC unquestionably addressed all of Ms. Shaw's grievances on the merits on numerous occasions. The DOC was provided with the "opportunity to correct its own mistakes with respect to the programs it administers before it [was] hauled into federal court." *Nyhuis*, 204 F.3d at 76 (quoting *McCarthy v. Madigan*, 503 U.S. 140 (1992)); *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes'") (quoting *McCarthy*). There is no dispute that the Defendants were given adequate notice of Ms. Shaw's medical care claims via the grievance process. In addition to those grievances discussed by the Defendants, the DOC was specifically advised that she would go to court and seek monetary damages in another grievance that discussed the deprivation of her Lyrica, her worsening medical condition, her need for a wheelchair, and the retaliatory deprivation of her job.[4] The Department of Corrections rejected her grievances every step of the way on the purported basis that her medical care needs were fully met. Ms. Shaw thus provided

---

[4] Plaintiff maintains that any alleged requirement a prisoner exhaust the remedies to be sought in Federal Court is unsupported by the case law. However, to the extent Defendants' argument has any foundation, the facts in this case do not support dismissal on these grounds, as discussed *supra*, Ms. Shaw fully exhausted a grievance which included a demand for damages as a result of the DOC's failure to provide her with adequate medical care and violations of the ADA.

prison personnel with sufficient "opportunity to correct" her complaints and "address[] the issues on the merits." *Woodford*, 548 U.S. at 89-90. Where, as here, a grievance is resolved on the merits, prison officials may not rely on a purported procedural default. *Gates v. Cook*, 376 F.3d 323, 331 n.6 (5th Cir. 2004); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir., *cert. denied*, 537 U.S. 949, 2002). Ms. Shaw complied with the DOC's "deadlines and other critical procedural rules." Her grievance was addressed, and rejected, on its merits each step of the way. Accordingly, Defendants may not now claim that a purported procedural defect bars her claims.

A closer look at the DOC's administrative remedy processes further militates against adopting Defendants' position that, contrary to *Booth*, prisoners exhaust forms of relief, not processes. First, there are several other administrative remedy processes outlined in different DOC policies from the one governing inmate grievances, and in none of these policies or processes is an inmate required to request damages or any other relief provided by a court. *See* Ex. A, DOC Policies: DC-ADM 006, DC-ADM 008, DC-ADM 801, DC-802, DC-803. Complaints regarding misconduct charges issued against a prisoner, sexual abuse, placement or retention in solitary confinement (aka restricted housing/administrative custody), censorship of mail, or requests seeking an accommodation for a disability are all addressed outside of the grievance process outlined in DC-ADM 804, and none of these require a request for damages. This inconsistency underscores that the request for compensation is not a "critical procedural rule" necessary to facilitate merits review of a grievance.

Finally, adoption of Defendants' position on this issue would lead to absurd results. For instance, DC-ADM 804 § 1.A.11.d states "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in

his/her initial grievance." If the use of word "must" were deemed sufficient to overturn *Booth*, it would mean that incarcerated plaintiffs would have to state in the grievance process whether they wanted declaratory relief, a preliminary injunction, a permanent injunction, the specific content of any injunction (consistent with the PLRA), whether she wanted punitive damages, class action relief, and even attorney fees. The purposes of the exhaustion requirement are not furthered by mandating that a prisoner state what relief she may seek in another forum, especially in circumstances where the prisoner wants relief without having to go to court. Either she "must" request all these specific items of relief if she is to seek them in court, or else this provision of the policy is not a "critical procedural rule" under *Woodford*.[5] Accordingly, this Court should find that Ms. Shaw exhausted the grievance process as required by the Supreme Court in *Booth* and *Woodford* and deny Defendants' Motion to Dismiss.

D. Whether Money Damages are "Available" Under the DOC's Grievance Process is a Question of Fact Requiring Discovery

The PLRA only provides exhaustion as a defense when "such administrative remedies are *available*." 42 U.S.C. §1997(e)(a) (emphasis added); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("The PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'"). In the face of an exhaustion defense, the question whether administrative remedies were in fact available is a threshold question that must be addressed before assessing a plaintiff's technical compliance with administrative procedures. *See Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth*, 532 U.S. at 738).

---

[5] Plaintiff is not arguing that a rule requiring a prisoner to identify the relief sought within and through the grievance process itself is not a critical procedural rule. Instead, she challenges the requirement that she identify what relief she will seek in *court* in the grievance process itself. Ms. Shaw did request the relief she was seeking through the grievance process in each grievance at issue.

In *Ross v. Blake*, the Supreme Court recently highlighted the importance of addressing the question of availability. 136 S. Ct. at 1858. The Court emphasized that the PLRA's availability "limitation on an inmate's duty to exhaust…has real content." *Id.* The Court then provided a non-exhaustive list of circumstances where prison grievance procedures are unavailable including when the policy is a "dead end," "opaque," or the prison thwarts the use of the process through "machination, misrepresentation, or intimidation." *Id.* at 1860. In discussing the "dead end" exception to availability, the Supreme Court held that a remedy is unavailable "if administrative officials have apparent authority, but decline ever to exercise it." *Id.* at 1859. Thus, "when the facts on the ground demonstrate that no such potential exists the inmate has no obligation to exhaust the remedy." *Id.* Whether monetary damages are "available" for medical care claims in practice in the Pennsylvania DOC is a question of fact, which can only be investigated through proper discovery. For example, in her 23 years within the Department of Corrections, Ms. Shaw informs counsel that she is unaware of any prisoner receiving compensation for a medical care claim through the grievance process. Ms. Shaw should be permitted to engage in discovery to learn whether, in fact, a damage remedy for medical care claims is truly "available." Consequently, Defendants' Motion to Dismiss should be denied as they have failed to meet their burden of establishing that Ms. Shaw failed to properly exhaust all *available* administrative remedies.

E. <u>Ms. Shaw's Medical Malpractice Claims Should be Permitted to Proceed</u>

Ms. Shaw's medical malpractice claims should be permitted to proceed as Defendants have suffered no prejudice by the short delay in filing the certificates of merit and dismissal with prejudice will only result in the re-filing of these same claims. Ms. Shaw concedes that the filing of the Certificates of Merit pertaining to the medical malpractice claims against Defendants

Burdette and Alpert were untimely under the controlling Pennsylvania law. *See* Pa.R.C.P. 1042.3 (requiring filing of certificate of merit within 60 days of filing of a complaint). Ms. Shaw filed this action on August 21, 2017, and the certificates of merit were filed on November 8, 2017. *See* Dkt. Nos. 16, 17**.** The certificates were filed after 79 days – 19 days late. Failure to file the certificates was an oversight of counsel.

That is not the end of the issue, however, for "under Pennsylvania law involuntary dismissal under Rule 1042 is not dismissal with prejudice. *Weaver v. University of Pittsburgh Medical Center*. Civ. A. No. 08-411, 2008 WL2942139, at *8 (W.D. Pa. July 30, 2008). Dismissal of a claim for failure to file a certificate of merit allows the plaintiff to refile her suit if the statute of limitations has not yet run. *Id*. In *Weaver*, the failure to file a certificate of merit that corresponded to the plaintiff's corporate negligence claim did not result in dismissal where the "[p]laintiff has demonstrated substantial compliance with the COM requirement, thus falling within the ambit of 'a misstep when attempting to do what any particular rule requires,' rather than a wholesale failure to take the necessary action, or doing nothing." *Id*.

Here, the same result should follow. Ms. Shaw has not failed to prosecute this claim. Importantly, Defendants have not been prejudiced by a mere 19-day delay. In *Scaramuzza v. Sciolla*, the court found that a 5-month delay did not prejudice defendants even though discovery had just begun. 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Defendants, who will have to defend against the Eighth Amendment claims in any event, are certainly not prejudiced by allowing the medical neglect claim to proceed. The final assessment of the court in *Scaramuzza* is apt here: "Although this Court could dismiss plaintiff's complaint without prejudice for failure to file a certificate of merit, now that plaintiff has filed a valid certificate of merit, dismissal without

16

prejudice with leave to amend is unnecessary and would only require paper shuffling and undue delay." *Id*. at 511-12.

## IV.　　CONCLUSION

For the foregoing reasons, Plaintiff Tracey Nadirah Shaw respectfully requests that the Motion to Dismiss by Defendants Burdette and Alpert be denied in its entirety.

Respectfully submitted,

*/s/ Bret Grote*
Bret D. Grote, Esq.
PA ID No. 317273
**Abolitionist Law Center**
P.O. Box 8654
Pittsburgh, PA  15221
Tel:  (412) 654-9070
bretgrote@abolitionistlawcenter.org

*/s/ Alexandra Morgan-Kurtz*
Alexandra Morgan-Kurtz, Esq.
PA ID No. 312631
**Pennsylvania Institutional Law Project**
100 Fifth Ave, Ste 900
Pittsburgh, Pa 15222
Tel: (412) 434-6175
amorgan-kurtz@pailp.org

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACEY NADIRAH SHAW | |
| *Plaintiff,* | Civil No. 1:17-cv-00229-SPB |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS; DR. REBECCA BURDETTE; and DR. LAWRENCE ALPERT, Medical Director at SCI Cambridge Springs | ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |
| *Defendants.* | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Brief in Opposition to Defendants Burdette and Alpert's Motion to Dismiss filed by Alexandra Morgan-Kurtz was served upon the following via ECF on November 28, 2017:

> Scott A. Bradley
> Office of Attorney General
> 564 Forbes Ave
> Manor Complex, 6th Floor
> Pittsburgh, Pa 15219
> sbradley@attorneygeneral.gov

> Respectfully submitted,
> /s/ Alexandra Morgan-Kurtz
> Attorney ID: PA 312631
> Pennsylvania Institutional Law Project
> 100 Fifth Ave, Ste 900
> Pittsburgh, PA 15222
> T: (412) 434-6175